UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC, | ) |
| Plaintiff, | ) )  Case No. 2:20-cv-01526 |
| v. | ) ) |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ and FRANCISCO J. RODRIGUEZ, | ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff CardConnect, LLC ("CCN") alleges the following in support of its Complaint against Defendants Law Office of Francisco J. Rodriguez (the "Firm") and Francisco J. Rodriguez ("Rodriguez") (collectively "Defendants"):

**I.  NATURE OF THE ACTION**

1. CCN brings this action for damages arising out of Defendants' improper withholding and conversion of over $235,000 rightfully belonging to CCN. On three separate occasions, Defendants improperly authorized to CCN three payment card transactions for settlement. Because numerous factors indicated these transactions were not legitimate, CCN rejected the transactions (*i.e.*, the payment card used in the transactions was never charged). Due to an internal processing system issue, however, CCN inadvertently deposited the amounts of the rejected transactions into one of Defendants' accounts. Defendants knew these funding errors occurred and that they had received funds to which they were not entitled. Yet Defendants refused to return the funds and instead placed a debit block on the account into which CCN deposited the funds to prevent CCN from retrieving them. CCN therefore brings this action to recover all damages, attorneys' fees, and costs incurred as a result of Defendants' unlawful conduct.

## II. PARTIES AND JURISDICTION

2. CCN is a Delaware Limited Liability Company with an office in King of Prussia, Pennsylvania. CCN's sole member is FDS Holdings, Inc. ("FDS"). FDS is a Delaware corporation with its principal place of business in Atlanta, Georgia. For purposes of diversity jurisdiction, CCN is therefore a citizen of Delaware and Georgia.

3. Rodriguez is a resident of the state of Texas. For the purposes of diversity jurisdiction, Rodriguez is therefore a citizen of Texas.

4. Rodriguez owns and operates the Firm as a proprietorship. The Firm is located in McAllen, Texas. For the purposes of diversity jurisdiction, the Firm is a citizen of Texas because Rodriguez is a citizen of Texas.

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because CCN and Defendants are citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6. Personal jurisdiction over Defendants and venue are proper in this Court pursuant to Section 45.2 of the parties' Agreement (defined below), which provides: "The exclusive venue for any actions or claims arising under or related to this Agreement shall be in the appropriate state or federal court located in Suffolk County, New York."[1]

## III. FACTUAL ALLEGATIONS

### A. Background

7. To accept credit and debit cards for payment, merchants generally must contract with acquiring banks. Pursuant to these contracts, acquiring banks "sponsor" merchants into the

---

[1] Likewise, the Agreement contains a New York choice-of-law provision: "Our Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to its choice of law provisions)." (Agreement § 45.1.)

networks of card brands such as Visa and Mastercard. In exchange for sponsorship and processing services, merchants pay a fee for each transaction processed.

8. In the normal case, when a cardholder uses a payment card to make a purchase from a merchant, the merchant transmits the transaction information to its acquiring bank. Acquiring banks often have relationships with processors like CCN who route transaction information from merchants through the card brand networks to the banks that issued the respective payment cards (the "issuing banks") for authorization. If authorized, the processor and/or acquiring bank then routes the authorization back to the merchant. The processor and/or acquiring bank deposits the proceeds from the transaction, less the processor's and/or acquiring bank's transaction fee and other applicable fees and/or charges, into the merchant's settlement account.

9. Merchants also have the ability to "force authorize" transactions; instead of obtaining authorization as discussed above, merchants can obtain authorization codes directly from, *e.g.*, issuing banks to "push" a transaction through the system. As discussed below, merchants undertake the additional risk that such a code will not be valid and/or that "force authorized" transactions will be rejected as part of the settlement process.

### B. The Agreement

10. On January 30, 2019, Rodriguez and the Firm[2] entered into a Merchant Processing Application and Agreement ("MPAA") with CCN (as the processor) and Wells Fargo Bank, N.A. (as the acquiring bank). (A true and correct copy of the MPAA is attached as **Exhibit A**.) The MPAA includes the executed Confirmation Page for the incorporated Program Guide (together, the MPAA and Program Guide are the "Agreement"). (Ex. A at 5; a true and correct copy of the Program Guide is attached as **Exhibit B**.)

---

[2] Because the Firm is a sole proprietorship, Rodriguez and the Firm are one and the same.

11. The Agreement provides that every transaction is subject to chargeback or adjustment:

> An authorization approval code only indicates the availability of funds on an account at the time the authorization is requested. It does not indicate that the person presenting the card is the rightful cardholder, nor is it a promise or guarantee that you will not be subject to a chargeback or adjustment.

(Agmt. § 9.)

12. The Agreement further prohibited Defendants from attempting "to obtain an authorization approval code from anyone other than us, unless we have authorized you to use a third party authorization system as set out in section 9. An authorization approval code from any other source may not be valid."[3] (*Id.*)

13. The Agreement warned Defendants that "irregular Card sales . . . increase [CCN's] exposure for your Chargebacks or otherwise present a financial or security risk to" CCN. (*Id.* § 30.4.4.)

14. Defendants represented and warranted in the Agreement each transaction submitted was "genuine" and "bona fide":

> Without limiting any other warranties hereunder, you represent, warrant to and covenant with, us, and with the submission of each Sales Draft reaffirm, the following representations, warranties and/or covenants: . . . each Card transaction is genuine and arises from a bona fide transaction permissible under the Card Organization Rules by the Cardholder directly with you, represents a valid obligation for the amount shown on the Sales Draft, preauthorized order, or Credit Draft, and does not involve the use of a Card for any other purpose . . . .

(*Id.* § 27.1.1.)

---

[3] The Agreement ultimately defines "us" and "we" as the "bank identified on the Application" and the "entity identified on the Application (other than the Bank) which provides certain services under the Agreement." (Program Guide at 42–43.) The bank identified on the Application is Wells Fargo Bank, N.A. (MPAA at 5.) The other entity identified on the Application is CardConnect. (*Id.*)

4

15. Defendants also agreed CCN had the right to debit any funds deposited to Defendants' accounts to obtain any amount owed to CCN:

> All credits to your Settlement Account or other payments to you are provisional and are subject to, among other things, our right to deduct our fees, our final audit, Chargebacks (including our related losses), and fees, fines and any other charge imposed on us by the Card Organizations as a result of your acts or omissions. **You agree that we may debit or credit your Settlement Account for any deficiencies, overages, fees, pending Chargebacks and any other amounts owed to us or any of our respective Affiliates, or we may deduct such amounts from settlement funds or other amounts due to you from us, or our respective Affiliates.** You further agree we can offset any amounts owed to us or our Affiliates related to activity in other accounts maintained in the name of or guaranteed by you, any of your principals, guarantors or authorized signors. Alternatively, we may elect to invoice you for any such amounts, net due 30 days after the invoice date or on such earlier date as may be specified.

(*Id.* § 23.3 (emphasis added).)

16. Finally, Defendants undertook a duty to indemnify CCN for any of Defendants' breaches of the Agreement:

> You agree to indemnify and hold us and the Card Organizations harmless from and against all losses, liabilities, damages and expenses: (a) resulting from the inaccuracy or untruthfulness of any representation or warranty, breach of any covenant or agreement or any misrepresentation by you under this Agreement; (b) arising out of your or your employees' or your agents' negligence or willful misconduct, in connection with Card transactions or otherwise arising from your provision of goods and services to Cardholders; (c) arising out of your use of the Services; or (d) arising out of any third party indemnifications we are obligated to make as a result of your actions (including indemnification of any Card Organization or Issuer).

(*Id.* § 33.1.)

### C. The February 11th Transaction: $50,000.00

17. On February 11, 2019, Defendants submitted a transaction for $50,000.00.

18. CCN rejected this transaction because: (1) it exceeded Defendants' average ticket amount; (2) it exceeded Defendants' high ticket amount; (3) it was a forced authorization for which CCN had not provided an authorization code (and CCN had not authorized Defendants to use a

5

third-party authorization system); and (4) CCN had little to no information to suggest it was a legitimate transaction.

19. Because CCN rejected the transaction, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. CCN therefore had no obligation to fund Defendants' account and Defendants were not entitled to any funds from this transaction.

20. Nonetheless, due to an issue with CCN's internal processing system, $50,000.00 was improperly deposited into one of Defendants' accounts.

21. CCN, pursuant to its rights under the Agreement, attempted to claw back these improperly deposited funds.

22. Defendants, however, placed a debit block on the account, preventing CCN from recovering the improperly deposited funds.

23. To this day, Defendants have not removed the debit block and have not returned CCN's $50,000.00.

### D. The April 23rd Transactions: $85,000.00 & $99,999.99

24. On April 23, 2019, Defendants submitted a transaction for $85,000.00 and a separate transaction for $99,999.99.

25. CCN rejected these transactions because: (1) they exceeded Defendants' average ticket amount; (2) they exceeded Defendants' high ticket amount; and (3) they were forced authorizations for which CCN had not provided an authorization code (and CCN had not authorized Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest they were legitimate transactions.

26. Because CCN rejected these transactions, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. CCN therefore

6

had no obligation to fund Defendants' account and Defendants were not entitled to any funds from these transactions.

27. Nonetheless, due to an issue with CCN's internal processing system, the $85,000.00 and $99,999.99 were improperly deposited into one of Defendants' accounts.

28. CCN, pursuant to its rights under the Agreement, attempted to claw back these improperly deposited funds.

29. Defendants, however, placed a debit block on the account, preventing CCN from recovering the improperly deposited funds.

30. To this day, Defendants have not removed the debit block and have not returned CCN's $184,999.99.

## COUNT I
## BREACH OF CONTRACT

31. CCN realleges and incorporates the preceding paragraphs as if set forth fully herein.

32. The Agreement is a binding, enforceable contract by and between Defendants and CCN.

33. CCN has fully performed all of its obligations to Defendants.

34. In spite of CCN's full and good faith performance, Defendants breached their contractual obligations by, among other things:

   a. Submitting illegitimate transactions for processing;

   b. Placing a debit block on Defendants' settlement account to block CCN's attempts to recover the funds; and

   c. Failing to return the $234,999.99 to CCN despite repeated explanation that the transactions were never processed and the funds were never received.

35. As a result of Defendants' breaches, CCN suffered substantial damages in an amount to be determined by the Court, but not less than $235,077.07[4] plus interest.

36. CCN is entitled to judgment against Defendants for the amount of CCN's damages.

37. Defendants have acted with malice, wantonness, willfulness, oppression and with a reckless indifference to consequences and/or the specific intent to cause CCN harm. Defendants' conduct is so egregious it rises to the level of an independent tort and shows a pattern of improper conduct against public policy. Accordingly, to punish, penalize and deter Defendants from engaging in conversion and similar wrongful conduct, CCN is entitled to punitive damages in an amount to be determined by the Court.

38. WHEREFORE, CCN prays for judgment against Defendants pursuant to Count I of its Complaint for an award of damages in an amount to be determined by the Court, but not less than $235,077.07, in addition to punitive or exemplary damages, CCN's attorneys' fees and expenses, costs of this action, interest, and such other and further relief as this Court deems just and proper.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

39. CCN realleges and incorporates the preceding paragraphs as if set forth fully herein.

40. The duty of good faith and fair dealing is implied in the Agreement.

41. Defendants breached their duty of good faith and fair dealing by, among other things: placing a debit block on Defendants' settlement account to block CCN's attempts to recover the funds.

42. Defendants' breaches sought to withhold the Agreement's benefits from CNN by preventing CCN from exercising its right under the Agreement to claw back the funds.

---

[4] This amount includes fees incurred as a result of Defendants' failure to return the funds.

8

43. As a result of Defendants' breaches, CCN suffered substantial damages in an amount to be determined by the Court, but not less than $235,077.07 plus interest.

44. CCN is entitled to judgment against Defendants for the amount of CCN's damages.

45. WHEREFORE, CCN prays for judgment against Defendants pursuant to Count II of its Complaint for an award of damages in an amount to be determined by the Court, but not less than $235,077.07, in addition to CCN's attorneys' fees expenses, costs of this action, interest, and such other and further relief as this Court deems just and proper.

## COUNT III
## CONVERSION

46. CCN realleges and incorporates the preceding paragraphs as if set forth fully herein.

47. Defendants received certain funds from CCN in error. The funds are the property of CCN.

48. By intentionally refusing to transfer the funds to CCN after repeated demands by CCN and retaining such funds and using such funds without authorization, Defendants exercised dominion over CCN's property in a manner that is inconsistent with CCN's interest.

49. Defendants exercised this dominion without CCN's consent or lawful justification.

50. As a proximate result of Defendants' conversion, CCN has suffered damages in an amount to be determined by the Court, but not less than $234,999.99 plus interest.

51. By committing conversion (including by knowingly and improperly retaining funds belonging to CCN and then refusing to return these funds even after multiple efforts to recover them), Defendants have acted with malice, wantonness, willfulness, oppression and with a reckless indifference to consequences and/or the specific intent to cause CCN harm. Defendants' conduct is so egregious it rises to the level of an independent tort and shows a pattern of improper conduct against public policy. Accordingly, to punish, penalize and deter Defendants from engaging in

conversion and similar wrongful conduct, CCN is entitled to punitive damages in an amount to be determined by the Court.

52. WHEREFORE, CCN prays for judgment against Defendants pursuant to Count III of its Complaint for an award of actual damages, punitive or exemplary damages, costs of this action, attorneys' fees and expenses, interest, and such other and further relief as this Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

53. CCN realleges and incorporates the preceding paragraphs as if set forth fully herein.

54. Defendants have obtained the benefit of and continue to derive a benefit from the funds converted and misappropriated from CCN. The amount of funds converted and misappropriated from CCN exceeds $234,999.99 and the funds were procured by wrongful means.

55. Defendants' retention of these funds violates the principles of justice, equity, and good conscious, and Defendants' direct benefit derived from these funds further violates principles of justice, equity, and good conscious.

56. Defendants, jointly or individually, have been unjustly enriched in an amount to be determined by the Court, but not less than $235,077.07.

57. WHEREFORE, CCN prays for judgment against Defendants pursuant to Count IV of its Complaint for an award of actual damages, costs of this action, attorneys' fees and expenses, interest, and such other and further relief as this Court deems just and proper.

## COUNT V
## QUANTUM MERUIT

58. CCN realleges and incorporates the preceding paragraphs as if set forth fully herein.

59. CCN provided valuable credit card processing services to Defendants in good faith.

60. Defendants received and accepted the benefits of the credit card processing services

10

CCN provided, including the funds at issue.

61. Defendants knew or should have known that CCN expected reimbursement of the funds at issue because they were deposited into Defendants' account in error.

62. It would be unjust for Defendants to retain the funds at issue.

63. CCN has incurred damages in an amount to be determined by the Court, but not less than $235,077.07.

64. WHEREFORE, CCN prays for judgment against Defendants pursuant to Count V of its Complaint for an award of actual damages, costs of this action, attorneys' fees and expenses, interest, and such other and further relief as this Court deems just and proper.

DATED: March 23, 2020

    Respectfully submitted,
    POLSINELLI PC
    By: */s/ John Peterson*
    John W. Peterson (#5394200)
    401 Commerce Street, Suite 900
    Nashville, TN 37219
    john.peterson@polsinelli.com
    (615) 259-1510
    *Attorney for Plaintiff*