UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:20-cv-01526 |
| v. | ) |
| | ) |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ and  FRANCISCO J. RODRIGUEZ, | ) |
| | ) |
| Defendants. | ) |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ and  FRANCISCO J. RODRIGUEZ, | ) |
| | ) |
| Third-Party Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| ANTONION JUAREZ HERNANDEZ; NEREYDA VEGA; ROYAL LIBERTY OIL LEADINGS, LLC; AND ROYAL INTERNATIONAL INVESTMENT GROUP, LLC | ) |

**PLAINTIFF CARDCONNECT, LLC'S MEMORNADUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

     This case is simple. Defendants signed a contract with Plaintiff CardConnect, LLC ("CCN") so that Defendants could accept credit card payments. According to Defendants, they intended to use CCN's services to act as a sort of "middleman" for their "client," who represented himself as a wealthy businessman. Thereafter, Defendants submitted fraudulent payment card transactions to CCN on behalf of their "client." Suspecting fraud, CCN rejected these transactions pursuant to the parties' contract. Due to an issue with CCN's internal processes, however, the funds were mistakenly transferred to Defendants' account, even though Defendants' client's card

75022218.8

was never charged. CCN explained this to Defendants and tried to claw back the funds. But, rather than allow CCN to recoup the funds as required under the parties' agreement, Defendants placed a debit block on their account and, to this day, have refused to transfer the funds back to CCN.

Defendants admit these key facts. Defendants admit they entered into a payment card processing contract with CCN. Defendants admit they submitted fraudulent payment card transactions to CCN, which is a breach of their warranty that each transaction submitted would be "bona fide" and "genuine." Defendants admit CCN informed Defendants the funds from those transactions were never received from the cardholder's account. Defendants admit they placed a debit block on their account to prevent CCN from recouping the funds, even though the contract gave CCN the right to debit Defendants' account to obtain amounts owned and obligated Defendants to indemnify CCN for any and all losses associated with Defendants' breaches. Thus, there is no dispute about any material fact and the Court should grant summary judgment in CCN's favor.

## FACTUAL BACKGROUND

### A.  The Credit Card Payment Industry

To accept credit and debit cards for payment, merchants generally must contract with acquiring banks. (Statements of Undisputed Material Facts ("SOF") ¶ 1.) Pursuant to these contracts, acquiring banks "sponsor" merchants into the networks of card brands such as Visa and Mastercard. (*Id.* ¶ 2.) In exchange for sponsorship and processing services, merchants pay a fee for each transaction processed. (*Id.*)

In the normal case, when a cardholder uses a payment card to make a purchase from a merchant, the merchant transmits the transaction information to its acquiring bank. (*Id.* ¶ 3.) Acquiring banks often have relationships with processors like CCN who route transaction

information from merchants through the card brand networks to the banks that issued the respective payment cards (the "issuing banks") for authorization. (*Id.* ¶ 4.) If authorized, the processor and/or acquiring bank then routes the authorization back to the merchant. (*Id.* ¶ 5.) The processor and/or acquiring bank deposits the proceeds from the transaction, less the processor's and/or acquiring bank's transaction fee(s) and other applicable fees and/or charges, into the merchant's settlement account. (*Id.* ¶ 6.)

Merchants also have the ability to "force authorize" transactions; instead of obtaining authorization as discussed above, merchants can obtain authorization codes directly from, *e.g.*, issuing banks to "push" a transaction through the system. (*Id.* ¶ 7.) As discussed below, merchants undertake the additional risk that such a code will not be valid and/or that "force authorized" transactions will be rejected as part of the settlement process. (*Id.* ¶ 8.)

**B.     The Fraudulent Transactions**

On January 30, 2019, Defendants[1] entered into a Merchant Processing Application and Agreement ("MPAA") and its incorporated Program Guide (collectively, the "Agreement") with CCN (as the processor) and Wells Fargo Bank, N.A. (as the acquiring bank). (SOF ¶ 10.)

According to Defendants' Third-Party Complaint, Defendants claim that they applied for CCN's processing services to facilitate the payments associated with their "client," Third-Party Defendant Antonio Hernandez ("Hernandez"). (*Id.* ¶ 11.) Defendants claim Hernandez approached them to obtain legal representation in various business ventures. (*Id.* ¶ 12.) One such venture was the acquisition of certain oil and gas properties and consulting services from Third-Party Defendant Nereyda Vega ("Vega"). (*Id.* ¶ 13.) According to Defendants, Hernandez claimed he

---

[1] Because the Firm is a sole proprietorship, Rodriguez and the Firm are one and the same. (SOF ¶ 9.)

3

needed to utilize Defendants as a sort of "middle-man" for the payments associated with these business ventures. (*Id.* ¶ 14.)

In total, Defendants submitted three transactions to CCN (the "Transactions"). The first was on February 11, 2019 for $50,000.00. (*Id.* ¶ 15.) The second and third were on April 23, 2019, for $85,000.00 and $99,999.99. (*Id.* ¶ 28.) CCN rejected these transactions upon submission because: (1) they exceeded Defendants' average ticket amount; (2) they exceeded Defendants' high ticket amount; (3) they utilized forced authorizations for which CCN had not provided authorization codes (and CCN had not authorized Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest these were legitimate transactions. (*Id.* ¶¶ 16-17, 29-30.)

Because CCN rejected the Transactions, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. (*Id.* ¶¶ 18, 31.) CCN therefore had no obligation to fund Defendants' account and Defendants were not entitled to any funds from this transaction. (*See infra* Section B.2.)

Nonetheless, due to an issue with CCN's internal processing system, the three amounts were mistakenly deposited into Defendants' account. (*Id.* ¶¶ 19-20, 32-33.) Upon learning of this, CCN informed Defendant of the error. (*Id.* ¶¶ 21-22, 34-35.) CCN also explained the credit cards were never charged and provided Defendants proof thereof on May 30, 2012. (*Id.*) CCN therefore attempted (pursuant to its rights under the Agreement) to claw back the improperly deposited funds. (*Id.* ¶¶ 23, 36.)

Defendants placed a debit block on the account, however, preventing CCN from recovering the improperly deposited funds. (*Id.* ¶¶ 24, 37.) To this day, Defendants have not removed the

debit block and have not returned the $234,999.99 CCN improperly deposited into Defendants' account. (*Id.* ¶¶ 25-26, 38-39.)

## ARGUMENT AND AUTHORITIES

"Summary judgment is appropriate where the submissions of the parties, taken together, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . . A dispute of fact is genuine if the record evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 78 (E.D.N.Y. 2019) (internal citations omitted).

Initial burden rests with the moving party to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). After the moving party meets this initial burden, the burden shifts to the non-moving party to put forth evidence which establishes the existence of a question of fact needing to be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003). Put another way, the non-moving party has the burden to "come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

The Court must resolve ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Any disputed facts are also construed in the light most favorable for the non-moving party. *Gustavia¸* 362 F. Supp. 3d at 78. However, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).

**A.     There Is No Genuine Dispute Defendants Breached the Agreement.**

To state a claim for breach of contract, Plaintiff must establish: (1) the existence of a contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of that contract; and (4) resulting damages. *Hampshire Properties v. BTA Bldg. & Developing, Inc.*, 122 A.D.3d 573, 573, 996 N.Y.S.2d 129, 130 (2014).[2] Here, the only element at issue is whether Defendants breached the Agreement. Although Defendants denied this allegation in their Answer, the language of the contract, paired with Defendants' other admissions, establish as a matter of law that Defendants breached the Agreement.

**1.     Defendants warranted every transaction was "genuine" and "bona fide" but admit the Transactions were fraudulent.**

The Agreement contained Defendants' representation and warranty that *each transaction* Defendants submitted was "genuine" and "bona fide":

> Without limiting any other warranties hereunder, you represent, warrant to and covenant with, us, and with the submission of each Sales Draft reaffirm, the following representations, warranties and/or covenants: . . .  each Card transaction is genuine and arises from a bona fide transaction permissible under the Card Organization Rules by the Cardholder directly with you, represents a valid obligation for the amount shown on the Sales Draft, preauthorized order, or Credit Draft, and does not involve the use of a Card for any other purpose . . . .

---

[2] The Agreement contains a New York choice-of-law provision: "Our Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to its choice of law provisions." (Ex. A-2 § 45.1.)

75022218.8

(Ex. A-2 § 27.1.1.) And Defendants admit that the Transactions were the result of a fraudulent scheme. (SOF ¶ 27, 40.) As such, there is no dispute Defendants breached their warranty that each Transaction was "genuine" and "bona fide."

> **2. The Agreement provides CCN the right to debit Defendants' account to obtain amounts owed, but Defendants placed a debit block on their account to prevent CCN from doing so.**

Because Defendants submitted fraudulent Transactions, CNN had no obligation to fund them. As such, CCN sought to recoup the funds transferred in error, as is its right under the Agreement:

> All credits to your Settlement Account or other payments to you are provisional and are subject to, among other things, our right to deduct our fees, our final audit, Chargebacks (including our related losses), and fees, fines and any other charge imposed on us by the Card Organizations as a result of your acts or omissions. **You agree that we may debit or credit your Settlement Account for any deficiencies, overages, fees, pending Chargebacks and any other amounts owed to us or any of our respective Affiliates, or we may deduct such amounts from settlement funds or other amounts due to you from us, or our respective Affiliates.** You further agree we can offset any amounts owed to us or our Affiliates related to activity in other accounts maintained in the name of or guaranteed by you, any of your principals, guarantors or authorized signors. Alternatively, we may elect to invoice you for any such amounts, net due 30 days after the invoice date or on such earlier date as may be specified.

(Ex. A-2 § 23.3 (emphasis added).) Even though Defendants admit CCN informed Defendants that the transfers were made in error, Defendants also admit that they blocked CCN from clawing back the funds by placing a debit block on the account, have not removed the debit block, and have not returned the funds to CCN. All of these actions were done in direct violation of Plaintiff's obligations under the Agreement.

> **3. Defendants are expressly obligated to indemnify CCN for all losses associated with Defendants' breaches of the Agreement.**

The Agreement could not be clearer, as it provides Defendants:

7

75022218.8

> [A]gree to indemnify and hold us and the Card Organizations harmless from and against all losses, liabilities, damages and expenses: (a) resulting from the inaccuracy or untruthfulness of any representation or warranty, breach of any covenant or agreement or any misrepresentation by you under this Agreement; (b) arising out of your or your employees' or your agents' negligence or willful misconduct, in connection with Card transactions or otherwise arising from your provision of goods and services to Cardholders; (c) arising out of your use of the Services; or (d) arising out of any third party indemnifications we are obligated to make as a result of your actions (including indemnification of any Card Organization or Issuer).

(Ex. A-2 § 33.1.)[3] Yet, to this day, Defendants have not only refused to return the funds to CCN; instead, they have affirmatively taken steps to prevent CCN from exercising its rights under the Agreement.

### B. Defendants' Affirmative Defenses Lack Merit.

Defendants' only argument against liability is that CCN's notice to Defendants was too late. But, as Defendants admit, CCN rejected the Transactions – putting Defendant on notice that the Transactions were not valid. In fact, the Agreement expressly warned Defendants that "irregular Card sales . . . increase [CCN's] exposure for your Chargebacks or otherwise present a financial or security risk to" CCN. (Ex. A-2 § 30.4.4.) Even so, the Agreement does not outline a timeframe by which CCN must attempt to recoup funds or notify Defendants of a fraudulent transaction. As such, the mere timing of CCN's recoupment efforts is insufficient to relieve Defendant of its obligations to pay CCN back for the funds improperly transferred to Defendants' accounts and to indemnify CCN for any "losses, liabilities, damages and expenses" resulting from Defendants' breach of the Agreement.

---

[3] The Agreement also: (1) Provides every transaction is subject to chargeback or adjustment; Prohibited Defendants from obtaining authorization codes from third parties; and (3) Warned Defendants that irregular card sales increased Defendants' risk of exposure to chargebacks. (Ex. A-2 §§ 9, 30.4.4.)

8

75022218.8

## CONCLUSION

The material facts of this case are not in dispute. Defendants admit they entered into the Agreement, Defendants admit they submitted fraudulent transactions, and Defendants admit they prevented CCN from clawing back the funds. These facts are all that is necessary for the Court to render judgment in CCN's favor.

DATED: October 23, 2020

>Respectfully submitted,
>POLSINELLI PC
>By: */s/ John Peterson*
>John W. Peterson (#5394200)
>401 Commerce Street, Suite 900
>Nashville, TN  37219
>john.peterson@polsinelli.com
>(615) 259-1510
>*Attorney for Plaintiff*

75022218.8

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served via email, on the following counsel of record or registered agent this 23rd day of October, 2020:

Francisco J. Rodriguez
1111 West Nolana, Suite A
McAllen, Texas 78504
frankr@mcallenlawfirm.com

                                            */s/ John Peterson*
                                              John W. Peterson

75022218.8