UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:20-cv-01526 ) ) |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ and FRANCISCO J. RODRIGUEZ, | ) ) ) ) |
| Defendants. | ) |
| LAW OFFICE OF FRANCISCO J. RODRIGUEZ and FRANCISCO J. RODRIGUEZ, | ) ) ) ) |
| Third-Party Plaintiff | ) ) |
| v. | ) ) |
| ANTONION JUAREZ HERNANDEZ; NEREYDA VEGA; ROYAL LIBERTY OIL LEADINGS, LLC; AND ROYAL INTERNATIONAL INVESTMENT GROUP, LLC | ) ) ) ) ) ) |

**STATEMENTS OF UNDISPUTED MATERIAL FACTS**

Plaintiff CardConnect, LLC ("CCN"), pursuant to Local Rule 56.1, submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Defendants Law Office of Francisco J. Rodriguez (the "Firm") and Francisco J. Rodriguez ("Rodriguez") (collectively "Defendants"):

**The Credit Card Payment Industry**

1.  To accept credit and debit cards for payment, merchants generally must contract with acquiring banks. (Decl. of Christian Wilson ¶ 3 ("CCN Decl."), attached hereto as **Exhibit A**.)

2. Pursuant to these contracts, acquiring banks "sponsor" merchants into the networks of card brands such as Visa and Mastercard. (*Id.* ¶ 3.) In exchange for sponsorship and processing services, merchants pay a fee for each transaction processed. (*Id.* ¶ 3.)

3. In the normal case, when a cardholder uses a payment card to make a purchase from a merchant, the merchant transmits the transaction information to its acquiring bank. (*Id.* ¶ 4.)

4. Acquiring banks often have relationships with processors like CCN who route transaction information from merchants through the card brand networks to the banks that issued the respective payment cards (the "issuing banks") for authorization. (*Id.* ¶ 4.)

5. If authorized, the processor and/or acquiring bank then routes the authorization back to the merchant. (*Id.* ¶ 4.)

6. The processor and/or acquiring bank deposits the proceeds from the transaction, less the processor's and/or acquiring bank's transaction fee(s) and other applicable fees and/or charges, into the merchant's settlement account. (*Id.* ¶ 4.)

7. Merchants also have the ability to "force authorize" transactions; instead of obtaining authorization as discussed above, merchants can obtain authorization codes directly from, *e.g.*, issuing banks to "push" a transaction through the system. (*Id.* ¶ 5.)

8. When doing so, merchants undertake the additional risk that such a code will not be valid and/or that "force authorized" transactions will be rejected as part of the settlement process. (*Id.* ¶ 5.)

**The Fraudulent Transactions**

9. Francisco J. Rodriguez ("Rodriguez") owns and operates the Law Office of Francisco J. Rodriguez (the "Firm") as a proprietorship. (Compl. 4; Answer 4; Defendants' First Third-Party Complaint ¶ 2 (ECF No. 10) ("Third-Party Compl.").)

10. On January 30, 2019, Rodriguez and the Firm[1] entered into a Merchant Processing Application and Agreement ("MPAA") with CCN (as the processor) and Wells Fargo Bank, N.A. (as the acquiring bank). (*See* CCN Decl. ¶ 6, CCN Decl. Exs. A-1, A-2; *see also* Compl. 10; Answer 10; Third-Party Compl. ¶¶ 18-20.)

11. According to Defendants' Third-Party Complaint, Defendants state that they applied for CCN's processing services to facilitate the payments associated with their "client," Third-Party Defendant Antonio Hernandez ("Hernandez"). (Third-Party Compl. ¶¶ 20-22, 24.)

12. Defendants state that Hernandez approached them to obtain legal representation in various business ventures. (*Id.* ¶ 13-17.)

13. One such venture was the acquisition of certain oil and gas properties and consulting services from Third-Party Defendant Nereyda Vega ("Vega"). (*Id.* ¶ 16.)

14. According to Defendants, Hernandez claimed he needed to utilize Defendants as a sort of "middle-man" for the payments associated with these business ventures. (*See id.* ¶17.)

**The February 11th Transactions: $50,000.00**

15. On February 11, 2019, Defendants submitted a transaction for $50,000.00. (Compl. 17; Answer 17; CCN Decl. ¶ 7.)

16. CCN rejected the transaction. (Compl. 18, Answer 18; Third-Party Compl. 22 ("After some difficulty . . ."); CCN Decl. ¶ 8.)

17. CCN rejected the transaction upon submission because: (1) it exceeded Defendants' average ticket amount; (2) it exceeded Defendants' high ticket amount; (3) it utilized forced authorizations for which CCN had not provided authorization codes (and CCN had not authorized

---

[1] Because the Firm is a sole proprietorship, Rodriguez and the Firm are one and the same.

3

Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest it was a legitimate transaction. (CCN Decl. ¶ 8, Ex. A-3.)

18. Because CCN rejected the Transactions, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. (CCN Decl. ¶ 9, Exs. A-4, A-5.)

19. Despite rejecting the transaction, the $50,000.00 was deposited into one of Defendants' accounts. (Compl. 20; Answer 20.)

20. This mistaken deposit was due to an issue with CCN's internal processing system. (CCN Decl. ¶ 10.)

21. CCN informed Defendants that the transaction had not been funded. (Third-Party Compl. 26; CCN Decl. Ex. A-5.)

22. On May 30, 2019, CCN informed Defendants that the Transactions had not been processed and provided proof of the same. (CCN Dec. ¶ 11, Ex. A-5.)

23. CCN attempted to claw back the $50,000.00. (Compl. 21; Answer 21.)

24. Defendants placed a debit block on the account, which prevented CCN from recovering the $50,000.00. (Compl. 22; Answer 22.)

25. Defendants have not removed the debit block. (Compl. 23; Answer 23.)

26. Defendants have not returned the $50,000.00. (Compl. 23; Answer 23.)

27. Defendants have filed a Third-Party Complaint against their "client" alleging that these transactions were part of a fraudulent scheme. (*See, generally* Third-Party Compl.)

### The April 23rd Transactions: $85,000.00 & $99,999.99

28. On April 23, 2019, Defendants submitted a transaction for $85,000.00 and a separate transaction for $99,999.99. (Compl. 24; Answer 24; CCN Decl. ¶ 7.)

29. CCN rejected these transactions. (Compl. 25, Answer 25; CCN Decl. ¶ 8.)

30. CCN rejected these transactions upon submission because: (1) they exceeded Defendants' average ticket amount; (2) they exceeded Defendants' high ticket amount; (3) they utilized forced authorizations for which CCN had not provided authorization codes (and CCN had not authorized Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest these were legitimate transactions. (CCN Decl. ¶ 8, Ex. A-3.)

31. Because CCN rejected the Transactions, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. (CCN Decl. ¶ 9.)

32. Despite rejecting the transactions, the $85,000.00 and $99,999.99 was deposited into one of Defendants' accounts. (Compl. 27; Answer 27; Third Party Compl. ¶ 26; CCN Decl. ¶ 10, Ex. A-4.)[2]

33. These mistaken deposits were due to an issue with CCN's internal processing system. (CCN Decl. ¶ 10.)

34. CCN informed Defendants that the transaction had not been funded. (Third-Party Compl. 26; CCN Decl. Ex. A-5.)

35. On May 30, 2019, CCN informed Defendants that the Transactions had not been processed and provided proof of the same. (CCN Dec. ¶ 11, Ex. A-5.)

---

[2] There appears to be a copy-and-paste errors in Defendants' Answer. Paragraphs 27-30 contain the wrong paragraph number and deposit amount in the text of the admission. Because the allegations in Paragraph 27-30 mirror the allegations in Paragraphs 20-23, CCN assumes Defendants copied and pasted their Answers to those paragraphs and forgot to correct the internal paragraph number and deposit amount. For the purposes of this Motion, Plaintiffs assume this was a typo and that the answers correspond to their number in the list.

5

36. CCN attempted to claw back the $85,000.00 and $99,999.99. (Compl. 28; Answer 28.)

37. Defendants placed a debit block on the account, which prevented CCN from recovering the funds. (Compl. 29; Answer 29.)

38. Defendants have not removed the debit block. (Compl. 30; Answer 30.)

39. Defendants have not returned the $184,999.99. (Compl. 30; Answer 30.)

40. Defendants have filed a Third-Party Complaint against their "client" alleging that these transactions were part of a fraudulent scheme. (*See, generally* Third-Party Compl.)

DATED: October 23, 2020

Respectfully submitted,

POLSINELLI PC

By: */s/ John Peterson*
John W. Peterson (#5394200)
401 Commerce Street, Suite 900
Nashville, TN  37219
john.peterson@polsinelli.com
(615) 259-1510
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via email, on the following counsel of record or registered agent this 23rd day of October, 2020:

Francisco J. Rodriguez
1111 West Nolana, Suite A
McAllen, Texas 78504
frankr@mcallenlawfirm.com

                                               */s/ John Peterson*
                                                 John W. Peterson

75022121.2