# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC,          )<br>                                              )<br>     Plaintiff,                       )<br>                                              )<br>v.                                         )<br>                                              )<br>LAW OFFICE OF FRANCISCO J.  )<br>RODRIGUEZ and FRANCISCO J. )<br>RODRIGUEZ,                         )<br>                                              )<br>     Defendants.                    )<br>LAW OFFICE OF FRANCISCO J.  )<br>RODRIGUEZ and FRANCISCO J. )<br>RODRIGUEZ,                         )<br>                                              )<br>     Third-Party Plaintiff         )<br>                                              )<br>v.                                         )<br>                                              )<br>ANTONION JUAREZ HERNANDEZ; )<br>NEREYDA VEGA; ROYAL LIBERTY OIL )<br>LEADINGS, LLC; AND ROYAL   )<br>INTERNATIONAL INVESTMENT )<br>GROUP, LLC                          )  | Case No. 2:20-cv-01526 |

## **DECLARATION OF CHRISTIAN WILSON**

I, Christian Wilson, declare as follows:

1. I am over eighteen (18) years of age and am fully competent to make this Declaration. I have personal knowledge of the matters set forth herein. If called upon to do so, I could and would testify competently as to those matters. I am authorized to submit this declaration.

2. I am employed as Global Head of Fraud & Risk Monitoring at Fiserv, which is the parent entity of CardConnect, LLC ("CCN"). In that capacity, I am responsible for managing fraud and risk mitigation functions.

3. To accept credit and debit cards for payment, merchants generally must contract with acquiring banks. Pursuant to these contracts, acquiring banks "sponsor" merchants into the networks of card brands such as Visa and Mastercard. In exchange for sponsorship and processing services, merchants pay a fee for each transaction processed.

4. In the normal case, when a cardholder uses a payment card to make a purchase from a merchant, the merchant transmits the transaction information to its acquiring bank. Acquiring banks often have relationships with processors like CCN who route transaction information from merchants through the card brand networks to the banks that issued the respective payment cards (the "issuing banks") for authorization. If authorized, the processor and/or acquiring bank then routes the authorization back to the merchant. The processor and/or acquiring bank deposits the proceeds from the transaction, less the processor's and/or acquiring bank's transaction fee(s) and other applicable fees and/or charges, into the merchant's settlement account.

5. Merchants also have the ability to "force authorize" transactions; instead of obtaining authorization as discussed above, merchants can obtain authorization codes directly from, *e.g.*, issuing banks to "push" a transaction through the system. When doing so, merchants undertake the additional risk that such a code will not be valid and/or that "force authorized" transactions will be rejected as part of the settlement process.

6. On January 30, 2019, the Francisco J. Rodriguez on behalf of the Law Office of Francisco J. Rodriguez (collectively "Defendants") entered into a Merchant Processing Application and Agreement ("MPAA") with CCN (as the processor) and Wells Fargo Bank, N.A. (as the acquiring bank). A true and accurate copy of that MPAA is attached hereto as **Exhibit 1**. The MPAA includes an executed Confirmation Page for the incorporated Program Guide. A true and accurate copy of that Program Guide is attached hereto as **Exhibit 2.**

7.      On February 11, 2019, Defendants submitted a transaction for $50,000.00 to CCN and on April 23, 2019, Defendants submitted a transaction for $85,000.00 and a separate transaction for $99,999.99 (together these three transactions are the "Transactions").

8.      CCN rejected the Transactions upon submission because: (1) they exceeded Defendants' average ticket amount; (2) they exceeded Defendants' high ticket amount; (3) they utilized forced authorizations for which CCN had not provided authorization codes (and CCN had not authorized Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest these were legitimate transactions. A true and accurate copy of the Comments Log associated with Defendants' account is attached hereto as **Exhibit 3**.

9.      Because CCN rejected the Transactions, the credit card utilized for them was never charged and CCN never received funds from the issuing bank.

10.     Due to an issue with CCN's internal processing system, however, the Transactions were mistakenly deposited into one of Defendants' accounts. A true and accurate copy of these Transactions' Summary is attached hereto as **Exhibit 4**.

11.     On May 30, 2019, CCN informed Defendants that the Transactions had not been processed and provided proof of the same. A true and accurate copy of that correspondence is attached hereto as **Exhibit 5**.

I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 23 day of October, 2020.

*Christian Wilson*
_____
Christian Wilson

3