

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC, § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> LAW OFFICE OF FRANCISCO J. § <br> RODRIGUEZ and FRANCISCO J. § <br> RODRIGUEZ, § <br>     Defendant. § | CASE NO. 2:20-cv-01526 |
| LAW OFFICE OF FRANCISCO J. § <br> RODRIGUEZ and FRANCISCO J. § <br> RODRIGUEZ § <br>     Defendant/Third-Party Plaintiff § <br> § <br> v. § <br> § <br> ANTONIO JUAREZ HERNANDEZ, § <br> NEREYDA VEGA, ROYAL LIBERTY § <br> OIL LEASING, LLC, AND ROYAL § <br> INTERNATIONAL INVESTMENT § <br> GROUP, LLC § <br>     Third-Party Defendants § | |

### DEFENDANTS/THIRD-PARTY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW LAW OFFICE OF FRANCISCO J. RODRIGUEZ and FRANCISCO J. RODRIGUEZ ("FJR"), Defendants/Third-Party Plaintiffs, and files this Supplemental Response to Plaintiff CARDCONNECT, LLC's ("CardConnect") Motion for Summary Judgment, and respectfully shows as follows:

1

**I.**

1. On November 30, 2020, CardConnect filed its Motion for Summary Judgment and its Reply to FJR's Response to the Motion. At no time did CardConnect provide notice to FJR under Local Civil Rule 56.2 advising of the requirement of a corresponding Statement of Material Facts.

2. On December 2, 2020, FJR moved this Court to grant leave to file a Supplemental Response to CardConnect's Motion for Summary Judgment. This Court subsequently granted said leave. FJR now files this Supplemental Response to CardConnect's Motion for Summary Judgment.

**II.**

5. In support of this Supplemental Response, FJR submits the following exhibits (continued from the exhibits in the previous response):

    a. **Exhibit 12** – Controverting Statement of Material Facts

**III.**

31. For the above reasons, FJR asks the Court to deny CardConnect's Motion for Summary Judgment on its breach of contract claim, and provide all other relief to which FJR is entitled.

    Respectfully Submitted,

    By: */s/ Francisco J. Rodriguez*
        FRANCISCO J. RODRIGUEZ, PRO SE
        1111 West Nolana, Suite A
        McAllen, Texas 78504
        Telephone No.: (956) 687-4363
        Telecopier No.: (956) 687-6415
        frankr@mcallenlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served to the following counsel of record on this 2nd day of December, 2020, to wit:

VIA E-MAIL: john.peterson@polsinelli.com

John W. Peterson
Polsinelli, PC
401 Commerce St., Ste. 900
Nashville, TN 37219
*Attorney for Plaintiff*

        /s/ *Francisco J. Rodriguez*
        FRANCISCO J. RODRIGUEZ



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

| | |
|---|---|
| CARDCONNECT, LLC,<br>　　Plaintiff,<br><br>v.<br><br>LAW OFFICE OF FRANCISCO J.<br>RODRIGUEZ and FRANCISCO J.<br>RODRIGUEZ,<br>　　Defendant. | §<br>§<br>§<br>§<br>§   CASE NO. 2:20-cv-01526<br>§<br>§<br>§<br>§ |
| LAW OFFICE OF FRANCISCO J.<br>RODRIGUEZ and FRANCISCO J.<br>RODRIGUEZ<br>　　Defendant/Third-Party Plaintiff<br><br>v.<br><br>ANTONIO JUAREZ HERNANDEZ,<br>NEREYDA VEGA, ROYAL LIBERTY<br>OIL LEASING, LLC, AND ROYAL<br>INTERNATIONAL INVESTMENT<br>GROUP, LLC<br>　　Third-Party Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## CONTROVERTING STATEMENT OF FACTS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

　　COMES NOW LAW OFFICE OF FRANCISCO J. RODRIGUEZ and FRANCISCO J. RODRIGUEZ ("FJR"), Defendants/Third-Party Plaintiffs, and files this Controverting Statement of Material Facts in opposition to Plaintiff CardConnect, LLC's ("CardConnect") Motion for Summary Judgment:

### "The Credit Card Payment Industry"

　　1.　　FJR does not have sufficient personal knowledge to admit or deny this paragraph.

2. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

3. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

4. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

5. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

6. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

7. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

8. FJR does not have sufficient personal knowledge to admit or deny this paragraph.

**"The Fraudulent Transactions"**

9. This paragraph is admitted.

10. This paragraph is denied. While FJR digitally signed the Merchant Processing Application and Agreement ("MPAA"), neither CardConnect nor its member bank (Wells Fargo) ever did. (Doc. 29-4, pg. 5). The MPAA contained express conditions precedent to its formation and effectiveness by providing that "Merchant understands this agreement shall not take effect until Merchant has been approved by CardConnect and/or the Member Bank and a merchant number is issued." (Doc. 29-4, pg. 5). Neither CardConnect nor its member bank signed the MPAA indicating their approval, and this is

undisputed. (Doc. 29-4, pg. 5; Doc. 31, § 1). Accordingly, no contract was formed by the contract's very own terms. (Doc. 29-4, pg. 5).

11. This paragraph is admitted.

12. This paragraph is admitted.

13. This paragraph is admitted.

14. This paragraph is admitted.

### "The February 11th Transactions: $50,000"

15. This paragraph is admitted.

16. This paragraph is denied. CardConnect worked with FJR to remove the hold on FJR's operating account, requesting various documents which FJR provided. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3).

17. This paragraph is denied. The transaction was unsuccessful because Third-Party Defendant Antonio Hernandez's ("Hernandez") card was fraudulent, not because of any "rejection" by CardConnect. (Doc. 30-1, ¶ 19; Doc. 30-5). CardConnect did not confirm the fraudulence of Hernandez's card to FJR until May 30, 2019. (Doc. 30-1, ¶ 19; Doc. 30-5). In fact, representatives of CardConnect had to ask FJR if Hernandez's account had ever been debited on May 29, 2019. (Doc. 30-1, ¶ 19; Doc. 30-5).

18. This paragraph is denied to the extent CardConnect asserts that it rejected the transactions. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3; Doc. 30-1, ¶ 19; Doc. 30-5). To the extent the paragraph discusses whether the credit card was charged and whether CardConnect received the funds, FJR does not have sufficient personal knowledge to admit or deny this paragraph.

19. This paragraph is admitted to the extent that $50,000 was deposited into FJR's IOLTA account. This paragraph is denied to the extent CardConnect alleges that it rejected the transaction. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3; Doc. 30-1, ¶ 19; Doc. 30-5).

20. This paragraph is denied. The deposit was made with CardConnect's knowledge and CardConnect representatives worked with FJR to remove the hold on FJR's operating account. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3).

21. This paragraph is denied. CardConnect made no such advisory of the fraudulence of Hernandez's card until late May, 2019. By this time, CardConnect approved an increase on FJR's debit limit to allow for larger transactions. (Doc. 30-1, ¶ 19; Doc. 30-5; Doc. 30-6, ¶ 9; Doc. 30-4).

22. This paragraph is admitted to the extent CardConnect admits that it did not inform FJR that the transactions had not processed until May 30, 2019. The paragraph is denied to the extent CardConnect asserts it provided "proof." CardConnect's "proof" was a screenshot of a spreadsheet purporting to show the transactions not processing. (Doc. 30-7). FJR never received any statements from CardConnect's bank confirming that the transactions never processed.

23. This paragraph is admitted to the extent that CardConnect placed a debit on FJR's operating account at the same time it deposited the funds into FJR's IOLTA account. (Doc. 30-1, ¶ 10).

24. This paragraph is denied. CardConnect's attempt to obtain the $50,000 out of FJR's operating account in February 2019 was not the result of a debit block, but rather insufficient funds being in FJR's operating account to fulfill the transaction resulting in a hold. (Doc. 30-1, ¶ 10). CardConnect worked with FJR to remove this hold on his

4

operating account. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3). FJR admits to placing a debit block on the account, but not until much later on May 30, 2019.

25. This paragraph is admitted. FJR has not removed the debit block he placed on his account on May 30, 2019.

26. This paragraph is admitted.

27. This paragraph is admitted.

### "The April 23rd Transactions: $85,000.00 & 99,999.99"

28. This paragraph is admitted.

29. This paragraph is denied. CardConnect did not reject the transactions, but rather again worked with FJR through its representatives to remove the hold placed on FJR's operating account by requesting various items. (Doc. 30-1, ¶ 18; Doc. 30-4, pg. 2).

30. This paragraph is denied. The transaction was unsuccessful because Third-Party Defendant Antonio Hernandez's ("Hernandez") card was fraudulent, not because of any "rejection" by CardConnect. (Doc. 30-1, ¶ 19; Doc. 30-5). CardConnect did not confirm the fraudulence of Hernandez's card to FJR until May 30, 2019. (Doc. 30-1, ¶ 19; Doc. 30-5). In fact, representatives of CardConnect had to ask FJR if Hernandez's account had ever been debited on May 29, 2019. (Doc. 30-1, ¶ 19; Doc. 30-5).

31. This paragraph is denied to the extent CardConnect asserts that it rejected the transactions. (Doc. 30-1, ¶ 18[1]; Doc. 30-4, pg. 2). To the extent the paragraph discusses whether the credit card was charged and whether CardConnect received the funds, FJR does not have sufficient personal knowledge to admit or deny this paragraph.

---

[1] FJR's affidavit was mistakenly mis-numerated by labeling paragraph 17 as paragraph 18. To avoid confusion, FJR refers to his affidavit based on how it is numbered.

32. This paragraph is admitted to the extent that the $85,000.00 and $99,999.99 was deposited into FJR's IOLTA account. This paragraph is denied to the extent CardConnect alleges that it rejected the transaction. (Doc. 30-1, ¶ 18; Doc. 30-4, pg. 2).

33. This paragraph is denied. The deposit was made with CardConnect's knowledge and CardConnect representatives worked with FJR to remove the hold on FJR's operating account. (Doc. 30-1, ¶ 18; Doc. 30-4, pg. 2).

34. This paragraph is denied. CardConnect made no such advisory of the fraudulence of Hernandez's card until late May, 2019. By this time, CardConnect approved an increase on FJR's debit limit to allow for larger transactions. (Doc. 30-1, ¶ 19; Doc. 30-5; Doc. 30-6, ¶ 9; Doc. 30-4).

35. This paragraph is admitted to the extent CardConnect admits that it did not inform FJR that the transactions had not processed until May 30, 2019. The paragraph is denied to the extent CardConnect asserts it provided "proof." CardConnect's "proof" was a screenshot of a spreadsheet purporting to show the transactions not processing. (Doc. 30-7). FJR never received any statements from CardConnect's bank confirming that the transactions never processed.

36. This paragraph is admitted to the extent that CardConnect placed a debit on FJR's operating account at the same time it deposited the funds into FJR's IOLTA account. (Doc. 30-1, ¶ 16).

37. This paragraph is denied. CardConnect's attempt to obtain the $85,000.00 and $99,999.99 out of FJR's operating account in April 2019 was not the result of a debit block, but rather insufficient funds being in FJR's operating account to fulfill the transaction resulting in a hold. (Doc. 30-1, ¶ 10). CardConnect worked with FJR to remove

this hold on his operating account. (Doc. 30-1, ¶¶ 10-12; Doc. 30-3). FJR did not place a debit block on the account until much later on May 30, 2019.

  38. This paragraph is admitted. FJR has not removed the debit block he placed on his account on May 30, 2019.

  39. This paragraph is admitted.

  40. This paragraph is admitted.

           Respectfully Submitted,

           By: */s/ Francisco J. Rodriguez*
             FRANCISCO J. RODRIGUEZ, PRO SE
             1111 West Nolana, Suite A
             McAllen, Texas 78504
             Telephone No.: (956) 687-4363
             Telecopier No.: (956) 687-6415
             frankr@mcallenlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served to the following counsel of record on this 2nd day of December, 2020, to wit:

VIA E-MAIL: john.peterson@polsinelli.com

John W. Peterson
Polsinelli, PC
401 Commerce St., Ste. 900
Nashville, TN 37219
*Attorney for Plaintiff*

            */s/ Francisco J. Rodriguez*
            FRANCISCO J. RODRIGUEZ