

401 Commerce Street, Suite 900, Nashville, TN 37219 • (615) 259-1510

July 1, 2021

John W. Peterson
615.259.1523
john.peterson@polsinelli.com

The Honorable Gary R. Brown
100 Federal Plaza
Courtroom 840
Central Islip, NY 11722-9014

    **Re:** *CardConnect, LLC v. Law Office of Francisco J. Rodriquez et al. (Case No. 2:20-cv-01526) – CardConnect's Motion for Summary Judgment*

Dear Judge Brown,

    Pursuant to the Court's Order on June 16, 2021, CardConnect ("CCN") files this pre-motion letter to request a pre-motion conference on its Motion for Summary Judgment. This case is simple and straightforward, which is why in October 2020 Judge Feuerstein expressly requested CCN move for summary judgment, which CCN promptly did. At that October hearing, Judge Feuerstein made clear she did not see a valid defense in Defendants' answer, and Defendants' desire to sue third parties did not change their obligations to CCN. Nothing substantive has changed.

## FACTUAL BACKGROUND

    On January 30, 2019, Defendants[1] entered into a Merchant Processing Application and Agreement ("MPAA") and its incorporated Program Guide (collectively, the "Agreement") with CCN. (Statement of Facts "SOF" ¶ 10.) Defendants claim they contracted to facilitate payments associated with their "client," Third-Party Defendant Antonio Hernandez, who claimed he needed to use Defendants as a "middle-man" for payments associated with his businesses. (*Id.* ¶¶ 11-14.)

    Defendants submitted three transactions to CCN ("Transactions"): (1) $50,000 on February 11, 2019; (2) $85,000.00 on April 23, 2019; and (3) $99,999.99 on April 23, 2019. (*Id.* ¶¶ 15, 28.) CCN rejected the Transactions because: (1) they exceeded Defendants' average ticket amount; (2) they exceeded Defendants' high ticket amount; (3) they used forced authorizations for which CCN had not provided codes (and CCN had not authorized Defendants to use a third-party authorization system); and (4) CCN had little to no information to suggest these were legitimate transactions. (*Id.* ¶¶ 16-17, 29-30.) Because CCN rejected the Transactions, the credit card (belonging to Defendants' "client") was never charged and CCN never received funds from the issuing bank. (*Id.* ¶¶ 18, 31.) CCN therefore did not have to fund Defendants' account and Defendants had no right to any funds from this transaction. (*See infra* Section B.2.)

    Still, due to an issue with CCN's internal processing system, the three amounts were mistakenly deposited into Defendants' account. (*Id.* ¶¶ 19-20, 32-33.) Upon learning of this, CCN

---

[1] Because the Firm is a sole proprietorship, Rodriguez and the Firm are one and the same. (SOF ¶ 9.)

polsinelli.com

Atlanta   Boston   Chicago   Dallas   Denver   Houston   Kansas City   Los Angeles   Miami   Nashville   New York
Phoenix   St. Louis   San Francisco   Seattle   Silicon Valley   Washington, D.C.   Wilmington
Polsinelli PC, Polsinelli LLP in California

78645998.3

promptly informed Defendants of the error, explained the cards were never charged, and provided proof of the same. (*Id.* ¶¶ 21-22, 34-35.) CCN therefore attempted (pursuant to its rights under the Agreement) to claw back the improperly deposited funds. (*Id.* ¶¶ 23, 36.) But Defendants placed a debit block on the account to intentionally prevent CCN from recovering the funds in direct violation of the parties' Agreement. (*Id.* ¶¶ 24, 37.) To this day, Defendants have not removed the debit block and have not returned the $234,999.99 CCN improperly deposited into their account. (*Id.* ¶¶ 25-26, 38-39.)

## DEFENDANTS BREACHED THE AGREEMENT

To establish Defendants' breach of contract, CCN must show: (1) the existence of a contract; (2) CCN's performance; (3) Defendants' breach; and (4) damages. *Hampshire Properties v. BTA Bldg. & Developing, Inc.*, 996 N.Y.S.2d 129, 130 (2014). Here, the only element at issue is whether Defendants breached. There can be no dispute Defendants did so in three ways.

First, the Agreement included Defendants' representation and warranty that *each transaction* Defendants submitted was "genuine" and "bona fide." (Ex. A-2 § 27.1.1 ("[Y]ou represent, warrant to and covenant with, us, and with the submission of each Sales Draft reaffirm [that] each Card transaction is genuine and arises from a bona fide transaction permissible under the Card Organization Rules by the Cardholder directly with you, represents a valid obligation for the amount shown on the Sales Draft . . . and does not involve the use of a Card for any other purpose . . . .").) And Defendants admit the Transactions resulted from a fraudulent scheme. (SOF ¶ 27, 40.) There is thus no dispute Defendants breached this warranty.

Second, because Defendants submitted fraudulent Transactions, CNN had no obligation to fund them. So CCN sought to recoup the funds transferred in error under the Agreement: "You agree that we may debit or credit your Settlement Account for any deficiencies, overages, fees, pending Chargebacks and any other amounts owed to us . . . ." (Ex. A-2 § 23.3.) Defendants admit CCN informed them the transfers were in error and that they blocked CCN from clawing back the funds by blocking the account and have not removed the block or returned the funds.

Third, Defendants agree to indemnify and hold CCN harmless "from and against all losses, liabilities, damages and expenses" arising from: (1) "the inaccuracy or untruthfulness of any representation or warranty, breach of any covenant or agreement or any misrepresentation" under the Agreement; (2) Defendants' or their employees; "negligence or willful misconduct"; or, generally (3) their use of CCN's services. (Ex. A-2 § 33.1.)[2] Yet, to this day, Defendants have not only refused to return the funds to CCN, they have taken affirmative steps to prevent CCN from exercising its rights under the Agreement.

## DEFENDANTS' AFFIRMATIVE DEFENSES LACK MERIT

Defendants' only argument is that CCN's notice to Defendants was too late. But, as Defendants admit, CCN rejected the Transactions–putting them on notice that the Transactions were invalid. In fact, the Agreement warned Defendants: "irregular Card sales . . . increase [CCN's] exposure for your Chargebacks or otherwise present a financial or security risk to" CCN. (Ex. A-2 § 30.4.4.) At any rate, the Agreement does not outline a timeframe for CCN to recoup

---

[2] The Agreement also: (1) provides every transaction is subject to chargeback or adjustment; (2) prohibited Defendants from obtaining authorization codes from third parties; and (3) warned Defendants that irregular card sales increased Defendants' risk of exposure to chargebacks. (Ex. A-2 §§ 9, 30.4.4.)

funds or notify Defendants of a fraudulent transaction. The mere timing of CCN's recoupment efforts therefore cannot relieve Defendants of their obligations to reimburse CCN.

## CONCLUSION

The material facts are not in dispute. Defendants admit they executed the Agreement, submitted fraudulent transactions, and prevented CCN from clawing back the funds. These facts are all that is necessary for the Court to render judgment in CCN's favor.

Sincerely,

*/s/ John W. Peterson*

John W. Peterson

Enclosures
cc: Francisco J. Rodriguez (via ECF)

78645998.3