

# Law Office of Francisco J. Rodriguez
**1111 W. Nolana Ave. Suite A**
**McAllen, Texas 78504**
**Tel 956.687.4363 ~ Fax 956.687.6415**

July 16, 2021

The Honorable Gary R. Brown
100 Federal Plaza
Central Islip, NY 11722-9014

      RE:    *CardConnect, LLC v. Law Office of Francisco J. Rodriguez et al.;* Civil
              Action No. 2:20-cv-0156 – Pre-motion Letter Response in Opposition to
              CardConnect's Pre-Motion Letter for Summary Judgment

Honorable Judge Brown:

      Defendants Law Office of Francisco J. Rodriguez and Francisco J. Rodriguez (collectively "FJR") file this letter response in opposition to CardConnect, LLC's ("CCN") pre-motion letter for summary judgment. CCN seeks summary judgment solely on its claim for breach of contract, specifically, the Merchant Processing Application and Agreement ("MPAA") and its incorporated Program Guide (collectively "the Agreement"). In sum, CCN cannot establish its breach of contract claim because (1) the Agreement was never bound according to its own terms; (2) CCN failed to mitigate its damages; and (3) the MPAA's Program Guide contains such unconscionable language that it is unenforceable even if the Agreement were bound.

## A. Relevant Facts

      In late January, 2019, Third-Party Defendant Antonio Hernandez ("Hernandez") engaged Defendants to represent him in purchasing properties, businesses, and ventures in Texas. Exhibit 1, ¶ 6; Exhibit 2. Hernandez authorized the use of his debit card to fund these transactions. Exhibit 1, ¶ 6. To facilitate the transactions, FJR applied with CCN for an account to process the debit card transactions. Exhibit 1, ¶ 7-8. FJR signed the MPAA furnished by CCN, but neither CCN nor its member bank, Wells Fargo, ever signed the MPAA. DE 45-2 (pg. 5-6).

      Three transactions involving Hernandez's card subsequently occurred, which were deposited into FJR's IOLTA trust account: (1) February 11, 2019 for $50,000; (2) April 23, 2019 for $85,000; and (3) April 23, 2019 for 99,999.99. Exhibit 1, ¶ 10, 16. After each transaction, CCN immediately attempted clawing back the funds from the wrong account (FJR's operating account), causing an insufficient funds hold on the operating account. Exhibit 1, ¶ 10, 16. CCN representatives worked with FJR's office manager, Efraim Ochoa, to release the holds. Exhibit 3; Exhibit 4. After providing CCN with all requested documents, the holds were released. Exhibit 1, ¶¶ 12, 18; Exhibit 3; Exhibit 4. After the first transaction, CCN provided FJR with a monthly volume increase to $200,000 in April of 2019, allowing the two subsequent transactions to occur at increased amounts. Exhibit 3; Exhibit 4. CCN did not indicate to FJR that Hernandez's card was fraudulent until late May, 2019. Exhibit 1,

¶ 19; Exhibit 5; Exhibit 6, ¶ 9; Exhibit 7.

**B. The Agreement Was Never Bound**

The MPAA that FJR signed contained express language providing that "Merchant understands this agreement ***shall not take effect*** until Merchant has been approved by [CCN] and/or the Member Bank and a merchant number is issued." DE 45-2 (pg. 5) (emphasis added). The signature page contained two boxes with signature lines with the phrase "**Application Approved By**" for CCN and the Member Bank, Wells Fargo, but neither were ever signed. DE 45-2 (pg. 5). Their approval must be manifested by signature as shown by other provisions of the agreement. The "Confirmation Page" of the MPAA has a section for "Important Member Bank Responsibilities" which includes a requirement under letter (b) that "the Bank must be a principal (signer) to the Agreement." DE 45-2 (pg. 6). CCN's Program Guide incorporates the rules of the card organizations. DE 45-3 (pg. 22; § 22 of Program Guide). These rules require member banks to sign the merchant agreement. Exhibit 9. For example, § 7.6.1 of Mastercard's rules provides that the merchant agreement must be "signed by the Customer." Exhibit 9, § 7.6.1(1). Mastercard's rules define the word "Customer" to mean the member bank, not a merchant such as FJR. Exhibit 9, § 1.1. Mastercard explicitly requires that the merchant agreement "[n]ot take effect or state or imply that it takes or has taken effect ***prior to being signed by the Customer***." Exhibit 9, § 7.6.1(3).

The signature of CCN and Wells Fargo was an express condition precedent to the Agreement's formation. *E.g., Bolivia on Behalf of Gen. Command of Bolivian Air Force v. Int'l Promotions & Ventures, Ltd.*, 618 F.Supp. 202, 205, 207 (S.D.N.Y. 1985); *Koa v. CardConnect Corp.*, 2019 WL 2615720, *2 (E.D. Pa. 2019). Accordingly, CCN cannot establish the existence of a contract.

**C. CCN Failed to Mitigate Damages**

CCN did not exercise reasonable efforts to mitigate its damages. *M. Golodetz Export Corp. v. S/S Lake Anja*, 751 F.2d 1103, 1112 (2nd Cir. 1985) CCN admits that the first transaction involving $50,000 occurred back on February 11, 2019, that it rejected this transaction, and failed to recoup the money. DE 45-1 (¶ 26). Instead of freezing FJR's merchant account until the $50,000 was recouped and/or informing FJR of the fraudulent card, CCN increased FJR's monthly volume to $200,000, which allowed the increased transactions on April 23, 2019 to occur. Exhibit 3; Exhibit 4.

**D. The Agreement is Unconscionable**

The Program Guide contained grossly unconscionable language that prevents its enforceability even if it was finalized. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (N.Y. 1988) For example, CCN's liability under its indemnification to the merchant is limited to, at most, $50,000, whereas the merchant's liability under its indemnification of CCN is virtually unlimited. DE 45-3 (*compare* Program Guide § 33.1 *with* § 33.2). While CCN appeared to agree to conspicuously labeled processing fees in the MPAA, the Program Guide fine-print gives CCN freedom to increase the fees at any time. DE 45-3 (§ 27.4)[1]. Given these facts, CCN's contract should not, in equity, be enforceable.

---

[1] There are several other sections with unconscionable language. DE 45-3 (§25.5; § 30.3; § 27.5)

## **CONCLUSION**

      CCN cannot enforce a contract that was never bound by its own terms, and contains unconscionable language that prevents it from being enforceable even if it were finalized. Further, CCN failed to mitigate its damages. FJR requests that this Court deny CCN's motion for summary judgment.

      Sincerely,

      Francisco J. Rodriguez